

**FILED**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

NOV 16 2017

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| UNITED STATES OF AMERICA AND ) <br> THE STATE OF ILLINOIS, ex rel. ) <br> SHANNAN MARIE BYBEE ) <br> ) <br> **Plaintiffs,** ) <br> ) <br> ) <br> vs. ) <br> CONTINENTAL NURSING AND ) <br> REHABILITATION CENTER, LLC, ) <br> INFINITY HEALTHCARE ) <br> MANAGEMENT OF ILLINOIS LLC ) <br> MIDWAY NEUROLOGICAL AND ) <br> REHABILITATION CENTER, LLC, ) <br> CITY VIEW MULTICARE CENTER, ) <br> LLC, MOISHE GUBIN, MICHAEL ) <br> BLISKO, and UNKNOWN EMPLOYEES) <br> **Defendants.** ) | CASE NO. _____ <br> FILED IN CAMERA <br> AND UNDER SEAL <br> DEMAND FOR JURY TRIAL <br><br> 1:17-cv-08310 <br> Judge Ruben Castillo <br> Magistrate Judge Daniel G. Martin |

## COMPLAINT

Plaintiffs UNITED STATES OF AMERICA and the STATE OF ILLINOIS, by the Relator, SHANNAN BYBEE (the "Relator"), through her attorney, Alon Stein of STEIN LAW OFFICES, for their Complaint against Defendants CONTINENTAL NURSING AND REHABILITATION CENTER, LLC; INFINITY HEALTHCARE MANAGEMENT OF ILLINOIS LLC; MIDWAY NEUROLOGICAL AND REHABILITATION CENTER, LLC, CITY VIEW MULTICARE CENTER, LLC, MOISHE GUBIN, MICHAEL BLISKO and UNKOWN EMPLOYEES ("Defendants"), state as follows.

### INTRODUCTION

1. This is an action for statutory damages and civil penalties under the False Claims Act, 31 U.S.C, §3729-3733, and the Illinois False Claims Act, formerly known as the Illinois Whistleblower Reward and Protection Act (the "Act"), 740 ILCS, §175/1 *et seq.*, as well as for

damages arising out of Defendants' unjust enrichment.

2. Congress developed the Preadmission Screening and Resident Review ("PASRR") program to ensure that admission and retention of people in nursing care facilities is appropriate, as part of the Omnibus Budget Reconciliation Act of 1987 commonly referred to as OBRA. Federal Medicaid law and regulations require states, such as Illinois to have a PASRR program to determine whether nursing facility applicants and residents meet nursing facility level of care and/or require specialized services.

3. For a state to have its Medicaid plan approved by the Centers for Medicare and Medicaid Services (CMS), it must maintain a PASSR program that complies with the relevant federal laws and regulations. Everyone who applies for admission to a nursing facility, regardless of payer, must be screened for evidence of serious mental illness, and/or intellectual disabilities, developmental disabilities, or related conditions. That is a Level I screen.

4. A nursing facility must not admit an applicant and expect to receive public aid unless, an independent third party evaluator, which in Illinois is the Illinois Department of Human Services ("DHS"), has determined whether the individual needs the level of services that a nursing facility provides, and whether individuals who need nursing facility services also need high-intensity specialized services. That is a Level II screen. Generally speaking, the intent of PASRR is to ensure that all nursing facility applicants are thoroughly evaluated, that they are placed in nursing facilities only when appropriate, and that they receive all necessary services while they are there.

5. Medicaid starts the process of payments to the nursing facility on the date that the screening is completed, and therefore there is an incentive for the nursing facilities to have the screen dated before the resident arrives at the nursing facility. Moreover, a Medicaid beneficiary

needs to be screened or Medicaid will not pay the nursing facility because an unscreened person is ineligible for services in a nursing facility.

6. The complaints of Relator generally are that Defendants have billed, and continue to bill, Medicare and Illinois Medicaid when, in fact, Defendants did not properly conduct an appropriate third-party screening to determine if nursing home care is appropriate. Instead, Defendants routinely forged and/or altered signatures on the Illinois Department of Public Aid screening documents, or otherwise improperly altered them, and submitted the forged and/or altered documents to Medicaid to improperly obtain public aid.

## JURISDICTION AND VENUE

7. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1345 and 31 U.S.C. § 3730.

8. The Court also has supplemental jurisdiction over the claims brought under the Illinois False Claims Act, and the various state law and unjust enrichment claims pursuant to 28 U.S.C. § 1367 and 31 U.S.C. § 3732.

9. Venue is proper in this district pursuant to 28 U.S.C. §1391, as well as pursuant to 31 U.S.C. § 3732, since Defendants conduct business in this District and the acts which are the subject of this action occurred herein.

## THE PARTIES

6. Plaintiff, the United States of America, is bringing this action on behalf of the United States Department of Health and Human Services (hereinafter "HHS"), an agency of the United States.

7. Plaintiff, the State of Illinois, is bringing this action on behalf of the Illinois Department of Healthcare and Family Services, formerly the Illinois Department of Public Aid (hereinafter "Illinois"), an agency of the State of Illinois.

8. Relator is a resident of McHenry County, Illinois. She is a citizen of the United States and brings this action on behalf of the United States of America and the State of Illinois. From in or about October 2015 through June 2016, Relator was employed by defendant Infinity Healthcare Management, Inc. of Hillside Illinois ("Infinity").

9. Defendants are in the business of owning, operating and managing skilled nursing facilities in numerous states, including, Illinois and Indiana. The Defendant nursing facilities are predominately owned by defendants Moishe Gubin, and Michael Blisko through the defendant entities. Defendants Gubin and Blisko are behind the decisions of the entity Defendants and are aware of the admissions process.

10. Relator was the Director of Business Development for Infinity for Illinois, and was charged with implementing programs and campaigns aimed at building the census of Infinity. She worked in at the Hillside, Illinois headquarters of Infinity. As part of her role, Relator centralized all the admissions for Infinity's Illinois facilities, numbering 14 in total, out of the Hillside, Illinois headquarters. As such, all admissions decisions regarding every Infinity resident came through Relator's department, and the department was renamed Infinity PAN.

## THE MEDICARE AND MEDICAID HEALTH CARE PROGRAMS; OBRA AND PASRR

11. At all relevant times, the United States, through HHS, has administered the federally financed health insurance program for persons aged 65 and over or who are disabled under Title XVIII of the Social Security Act, 42 U.S.C., §1395, *et seq.*

12. Overall responsibility for the administration of the Medicare program resides with HHS. Within HHS, the responsibility for program administration has been delegated to the Centers for Medicare and Medicaid services ("CMS"), formerly the Health Care Financing and Administration ("HCFA").

13. There are four (4) major parts to the Medicare program:

- Part A, which is mainly institutional service coverage;

- Part B, which supplements Part A and covers physician services and other services such as payments for prescription drugs that Part A does not cover;

- Part C, which is for HMO-type plans for Medicare beneficiaries; and

- Part D, which is the optional supplement program covering certain prescription drugs, which is the subject of this Complaint.

14. Medicare is funded by premiums paid by enrolled Medicare beneficiaries, contributions from the Federal Treasury, and co-payments and/or deductibles for certain items and services including those relating to prescription drugs. Medicare Part A (Hospital Insurance) covers skilled nursing care provided in a skilled nursing facility ("SNF") under certain conditions for a limited time.

15. Title XIX of the Social Security Act sets forth the framework for Medicaid Programs which are for the aged, blind, disabled and financially disadvantaged. Subject to

5

federal approval, each state develops and administers its own Medicaid program and receives a federal match for expenditures made (In Illinois, roughly 50%).

16. Under OBRA, discussed above, Preadmission Screening and Resident Review (PASRR) is a federal requirement to help ensure that individuals are not inappropriately placed in nursing homes for long term care. PASRR requires that 1) all applicants to a Medicaid-certified nursing facility be evaluated for serious mental illness (SMI) and/or intellectual disability (ID); 2) be offered the most appropriate setting for their needs (in the community, a nursing facility, or acute care settings); and 3) receive the services they need in those settings.

17. PASRR is an important tool for states to use in rebalancing services away from institutions and towards supporting people in their homes, and to comply with the Supreme Court decision, *Olmstead vs L.C.*, 527 U.S. 581 (1999), under the Americans with Disabilities Act, individuals with disabilities cannot be required to be institutionalized to receive public benefits that could be furnished in community-based settings. PASRR can also advance person-centered care planning by assuring that psychological, psychiatric, and functional needs are considered along with personal goals and preferences in planning long term care.

18. The PASRR process requires that all applicants to Medicaid-certified Nursing Facilities be given a preliminary assessment to determine whether they might have SMI or ID. This is called a "Level I screen." Those individuals who test positive at Level I are then evaluated in depth, called "Level II" PASRR. The results of this evaluation result in a determination of need, determination of appropriate setting, and a set of recommendations for services to inform the individual's plan of care.

19. All applicants to either a Medicaid certified nursing facility, regardless of income, assets, or funding sources, must receive a Preadmission Screen (PAS) and Level I screening prior to admission.

20. Nursing facilities must not admit any new resident with a serious mental illness before a PASRR determination is made, which indicates the person requires NF services and which determines whether the person needs specialized services. No federal payment may be made for nursing facility services provided to a person with a serious mental illness who has not been screened and approved for admission.

21. In addition, in Illinois, 89 Illinois Administrative Code, Chapter I, Section 140.642, subchapter (d) (Section 140.642 Screening Assessment for Nursing Facility and Alternative Residential Settings and Services) states "Beginning July 1 1996, and individual 18 years of age or older, except those identified in subsection (c) of the Section seeking admission to a nursing facility licensed under the Nursing Home Care Act (210 ILCS 45) for nursing facility services must be screened to determine his or her need for those services pursuant to this Section. . ."

22. Without the appropriate required screens, Medicaid will not reimburse a nursing facility for services to an un-screened resident.

### DEFENDANTS' ILLEGAL ACTIONS IN FORGING AND/OR CUTTING AND PASTING SIGNATURES OF THIRD-PARTY DHS SCREENERS TO OBTAIN MEDICAID FUNDS

23. Relator oversaw a staff for Infinity PAN, including Elizabeth Roman, a woman who worked for Infinity prior to Relator's hire, and who was previously working at Midway Neurological and Rehabilitation Center in Bridgeview, Illinois before being reassigned to Infinity PAN.

24. In or around February 27, 2016, an event occurred at one of the Infinity facilities, Continental Nursing and Rehabilitation Center in Chicago, Illinois ("Continental"), where five (5) residents overdosed on heroin, and they were evacuated to the hospital via 911. Continental was known in Infinity and the industry at large, as admitting a large number of mentally ill patients. The event was carried on the local news channels and created a crisis-like reaction within Infinity and Infinity PAN.

25. The Relater learned that facility personnel were directed to audit all the residents' charts and that audit found, among other things, that 28 residents were without a screen in their charts.

26. In and around April 2016, Carrie DiPaola, the Vice President of Operations for Infinity, demanded that the Relator and Elizabeth Roman meet with her and Tammy McDermand, the Vice President of Clinical Services at Infinity, in a conference room at Infinity's headquarters in Hillside, Illinois.

27. At that meeting, Carrie DiPaolo said that Elizabeth Roman was very good at "finding" missing screens and that the 28 screens needed to be "found" by that Tuesday because that was when the State was going to return to revisit the issue of lack of screens in the 28 files.

28. The Illinois Department of Public Health was surveying for regulatory compliance, after the February overdose event and remained there past April 2016.

29. Elizabeth Roman told the Relator that she routinely forged and/or altered screens in the past for the Defendants, and the reason Carrie DiPaulo asked her to "find" the screens was because the screens were never there and Elizabeth Roman was expected to create them, by forgery and/or alteration.

30. Elizabeth Roman admitted to the Relator that she got paid by Infinity to forge and/or alter screens. The Relator was told, through e-mail, to approve Elizabeth Roman's "bonus." It was a check for $350.00.

31. Carrie DiPaulo only answered to Michael Blisko and is one of Infinity's longest serving executives. Carrie DiPaulo is known to religiously solicit Michael Blisko and Moishe Gubin for advice and guidance, and it is known within Infinity that she is Michael Blisko's mouthpiece.

32. Elizabeth Roman also admitted to the Relator that Carrie DiPaulo and Elizabeth Roman forged and/or altered many documents, including screens and medical charts, at facilities such as City View, Continental and Midway Neurological, and others owned by Gubin and Blisko.

33. It was learned by the Relator that Elizabeth Roman's cousin, Salina Rodriguez, also forged and/or altered records and screens at Infinity facilities, and she received cash bonuses for said acts.

34. Defendants have intentionally and routinely not properly conducted an appropriate third-party screening to determine if nursing home care is appropriate and have instead forged signatures, or otherwise improperly submitted altered Illinois Department of Public Aid screening documents and have submitted the forged and/or altered documents to Medicaid to improperly obtain public aid. This practice is widespread, and has cost the government large sums of money. In addition to the statements made to the Relator, the Relator has independently verified that screening documents submitted to Medicaid have been forged, altered, was otherwise cut and paste, and/or were not completed by the writers of the certifying individual signatures.

35. The reason why Elizabeth Roman was instructed to forge and/or alter the screens was because the Defendants wanted to get paid on residents who would not qualify for nursing home care; or get paid earlier that they would have had they got a true screen from a third party entity, in violation of federal and state law.

36. It was further part of their scheme that Defendants converted any fraudulently obtained payments from public aid to its own benefit and use.

37. Relator has made no public disclosure of the facts alleged herein as described in 31 USC § 3730e(4)(A).

38. Defendants' knowing, willful and material execution of the fraudulent scheme to seek public aid reimbursement when it did not complete the required screens, and instead routinely forged and/or altered signatures on the Illinois Department of Public Aid screening documents and have submitted the forged and/or altered documents to Medicaid to improperly obtain public aid violates 18 U.S.C. §§ 1035 (False statements relating to health care matters), 1341(Frauds and Swindles) and 1347 (Health care fraud) and OBRA.

## COUNT I
### (FALSE CLAIMS ACT-PRESENTING FALSE CLAIMS)
### 31 U.S.C. §3729(a)(1)(A).

39. Relator repeats and realleges paragraphs 1 through 38 of this Complaint as if fully set forth herein.

40. In performing the acts described above, Defendants, through their own acts and through their various officers, directors, agents and/or employees, knowingly presented or caused to be presented to an agency, officer, or employee of the United States false or fraudulent claims for payment or approval in violation of the False Claims Act, 31 U.S.C. §§ 3729-3733.

41. Because of Defendants' acts, the United States sustained damages in an amount to be determined at trial.

## COUNT II
### (FALSE CLAIMS ACT-USE OF FALSE RECORDS OR STATEMENTS TO GET FALSE CLAIMS PAID)
### 31 U.S.C. § 3729 (a) (1) (B)

42. Relator repeats and realleges paragraphs 1 through 41 of this Complaint as if fully set forth herein.

43. In performing the acts described above, Defendants, through their own acts and those of its various officers, directors, agents and/or employees, knowingly made, used, or caused to be made or used false records or statements material to a false or fraudulent claim, to get false or fraudulent claims paid or approved in violation of the False Claims Act, 31 U.S.C. §§ 3729-3733.

44. Because of Defendants' acts, the United States has sustained damages in an amount to be determined at trial.

## COUNT III
### (FALSE CLAIMS ACT-POSSESSION OF THE GOVERNMENT'S MONEY)
### 31 U.S.C. 3729 (a)(1)(D)

45. Relator repeats and realleges paragraphs 1 through 44 of this Complaint as if fully set forth herein.

46. In performing the acts described above, Defendants, through their own acts and through its various officers, directors, agents and/or employees, knowingly has or had the possession, custody, or control of property or money, used or to be used by the Government, and has intended to defraud the United States, in violation of the False Claims Act, 31 U.S.C. §§ 3729-3733.

47. Because of Defendants' acts, the United States has sustained damages in an amount to be determined at trial.

## COUNT IV
### (FALSE CLAIMS ACT-PAYMENT UNDER MISTAKE OF FACT)

48. Relator repeats and realleges paragraphs 1 through 47 of this Complaint as if fully set forth herein.

49. The United States made payments in response to Defendants' claims under the erroneous belief that the records, statements, and amounts upon which Defendants' claims were based were true, correct and proper.

50. The United States' erroneous beliefs were material to the payments made by the United States to Defendants.

51. Because of these mistakes of fact, the United States paid Defendants money to which they were not entitled.

52. By reason of these payments, the United States has suffered damages in an amount to be determined at trial.

## COUNT V
### (UNJUST ENRICHMENT)

53. Relator repeats and realleges paragraphs 1 through 52 of this Complaint as if fully set forth herein.

54. Because of Defendants' improper conduct, Defendants have been unjustly enriched with monies which in good conscience they should not be allowed to retain.

55. Defendants have been unjustly enriched to the detriment of the United States, and the United States is entitled to damages in an amount to be determined at trial.

### COUNT VI
### (ILLINOIS FALSE CLAIMS ACT-PRESENTING FALSE CLAIMS)
### 740 ILCS § 175/1 (3)(a)(1) (A)

56. Relator repeats and realleges paragraphs 1 through 55 of this Complaint as if fully set forth herein.

57. In performing the acts described above, Defendants, through their own acts and through their various officers, directors, agents and/or employees, knowingly presented or caused to be presented to an agency, officer, or employee of the State of Illinois false or fraudulent claims for payment or approval in violation of the Illinois False Claims Act, formerly known as the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175/1 *et seq.*

58. Because of Defendants' acts, the State of Illinois has sustained damages in an amount to be determined at trial.

### COUNT VII
### (ILLINOIS FALSE CLAIMS ACT- USE OF FALSE RECORDS OR STATEMENTS TO GET FALSE CLAIMS PAID)
### 740 ILCS § 175/1 (3)(a)(1) (B)

59. Relator repeats and realleges paragraphs 1 through 58 of this Complaint as if fully set forth herein.

60. In performing the acts described above, Defendants, through their own acts and those of their various officers, directors, agents and/or employees, knowingly made, used, or caused to be made or used false records or statements material to a false or fraudulent claim, to get a false or fraudulent claim paid or approved in violation of the Illinois False Claims Act,

formerly known as the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175/1 *et seq.*

61. Because of Defendants' acts, the State of Illinois has sustained damages in an amount to be determined at trial.

## COUNT VIII
### (ILLINOIS FALSE CLAIMS ACT- POSSESSION OF THE GOVERNMENT'S MONEY) 740 ILCS § 175/1 (3)(a)(1) (D)

62. Relator repeats and realleges paragraphs 1 through 61 of this Complaint as if fully set forth herein.

63. In performing the acts described above, Defendants, through their own acts and through their various officers, directors, agents and/or employees, knowingly has or had the possession, custody, or control of property or money, used or to be used by the State of Illinois, and has intended to defraud the State of Illinois, in violation of the Illinois False Claims Act, formerly known as the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175/1 *et seq.*

64. Because of Defendantds' acts, the State of Illinois has sustained damages in an amount to be determined at trial.

## COUNT IX
### (ILLINOIS FALSE CLAIMS ACT-PAYMENT UNDER MISTAKE OF FACT)

65. Relator repeats and realleges paragraphs 1 through 64 of this Complaint as if fully set forth herein.

66. The State of Illinois made payments in response to Defendants' claims under the erroneous belief that the records, statements, and amounts upon which Defendants claims were based were true, correct and proper.

67. The State of Illinois' erroneous beliefs were material to the payments made by the State of Illinois to Defendants.

68. Because of these mistakes of fact, the State of Illinois paid Defendants money to which they were not entitled.

69. By reason of these payments, the State of Illinois has suffered damages in an amount to be determined at trial.

## COUNT X
### (UNJUST ENRICHMENT)

70. Relator repeats and realleges paragraphs 1 through 69 of this Complaint as if fully set forth herein.

71. Because of Defendants' improper conduct Defendants have been unjustly enriched with monies which in good conscience they should not be allowed to retain.

72. Defendants have been unjustly enriched to the detriment of the State of Illinois and the State of Illinois is entitled to damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff UNITED STATES OF AMERICA and STATE OF ILLINOIS, by the Relator, SHANNAN BYBEE, respectfully request that this Court enter judgment against Defendants CONTINENTAL NURSING AND REHABILITATION CENTER, LLC; INFINITY HEALTHCARE MANAGEMENT OF ILLINOIS LLC; MIDWAY NEUROLOGICAL AND REHABILITATION CENTER, LLC, CITY VIEW MULTICARE CENTER, LLC, MOISHE GUBIN and MICHAEL BLISKO as follows:

### AS TO COUNTS I THROUGH V

a. That the United States be awarded damages in the amount of three times the damages sustained by the United States because of the false claims and fraud alleged in the

15

Complaint, as the False Claims Act, 31 U.S.C. § 3729 *et. seq.*, and all other amounts provided by the False Claims Act, plus costs;

      b.      That civil penalties of $5,000 to $10,000 be imposed for each and every false claim that Defendants presented or caused to be presented to the United States;

      c.      That pre-and post-judgment interest be awarded, along with reasonable attorneys' fees costs, and expenses which Relator necessarily incurred in bringing and pressing this case;

      d.      That the Relator be awarded the maximum amounts allowed pursuant to the False Claims Act;

      e.      That Defendants be ordered to repay all sums wrongfully obtained or paid;

      f.      Under Count V, for damages in an amount to be determined at trial, plus interest and costs;

      g.      For all other relief to which the United States may be entitled; and

      h.      For such other and further relief as this Court deems just and proper.

**AS TO COUNTS VI THROUGH X**

      a.      That the State of Illinois be awarded damages in the amount of three times the damages sustained by the State of Illinois because of the false claims and fraud alleged in the Complaint, as Illinois False Claims Act, formerly known as the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175/1 *et seq.*, and all other amounts provided by the False Claims Act, plus costs;

      b.      That civil penalties of $5,500 to $11,000 be imposed for each and every false claim that Defendants presented or caused to be presented;

      c.      That pre-and post-judgment interest be awarded, along with reasonable attorneys' fees costs, and expenses which Relator necessarily incurred in bringing and pressing this case;

  d. That the Relator be awarded the maximum amounts allowed pursuant to the Illinois False Claims Act, formerly known as the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175/1 *et seq.*;

  e. That Defendants be ordered to repay all sums wrongfully obtained or paid;

  f. Under Count X, for damages in an amount to be determined at trial, plus interest and costs;

  g. For all other relief to which the State of Illinois may be entitled; and

  h. For such other and further relief as this Court deems just and proper.

### JURY DEMAND

Relator hereby demands a trial by jury on all claims, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: November 16, 2017    Respectfully submitted,

            **Relator, SHANNAN MARIE BYBEE**

            By: _____
              Alon Stein, One Of Her Attorneys

Alon Stein (#6278515)
**STEIN LAW OFFICES**
1455 Golf Road, Suite 202
Des Plaines, IL 60016
(847) 571-1805
(414) 622-0279
astein@law-stein.com